1
2
3
4
5
6
7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    ROQUE LARIOS, JR.,                         No.  1:24-cv-00302-KES-SKO (HC)

12                 Petitioner,                    **FINDINGS AND RECOMMENDATION
                                                 TO DENY PETITION FOR WRIT OF**
13          v.                                    **HABEAS CORPUS**

14    ISMAEL ALOMARI, Warden,                     **[21-DAY OBJECTION DEADLINE]**

15                 Respondent.

16

17          Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

18    pursuant to 28 U.S.C. § 2254.  This matter was referred to the undersigned pursuant to 28 U.S.C.

19    § 636(b)(1)(B) and Local Rule 302.  As discussed below, the Court finds the petition to be

20    without merit and recommends it be **DENIED.**

21    **I.      PROCEDURAL HISTORY**

22          On October 15, 2020, a Kern County jury found Petitioner guilty of attempted murder

23    (Cal. Penal Code §§ 187/664) (Count One); and assault with a firearm (Cal. Penal Code §

24    245(a)(2)) (Count Two). <u>People v. Larios</u>, 2022 WL 13764789 (Cal. Ct. App. 2022); (Doc. 18-1,

25    2[1]). Prior to jury deliberations, Petitioner pled no contest to illegal possession of a firearm (Cal.

26    Penal Code § 29800(a)(1)) (Count Four), and illegal possession of ammunition (Cal. Penal Code

27    _____

28    [1] Docket citations are to ECF-imposed pagination.

                                                    1

1    § 30305(a)(1)) (Count Five). Id. The jury further found true allegations that Petitioner

2    premeditated the attempted murder (Cal. Penal Code § 189), that he personally discharged a

3    firearm causing great bodily injury (Cal. Penal Code §§ 12022.53(d), 12022.5(a), 12022.7(a)),

4    and that he was previously convicted of a serious felony (Cal. Penal Code §§ 667(c)-(j),

5    1170.12(a)-(e), 667(a)). Id. The jury acquitted Petitioner of the charge of assault with a firearm

6    relating to a separate confrontation (Cal. Penal Code § 245(a)(2) (Count Three). Id. Petitioner was

7    sentenced to an indeterminate prison term of 50 years to life.  Id.

8         Petitioner appealed to the California Court of Appeal, Fifth Appellate District ("Fifth

9    DCA"). On October 24, 2022, the Fifth DCA affirmed the judgment but remanded the case for a

10   resentencing hearing. Id. Petitioner then petitioned for review in the California Supreme Court.

11   (Doc. 18-3.)  On January 11, 2023, the California Supreme Court summarily denied review. (Doc.

12   18-4.)

13        On August 9, 2024, the Kern County Superior Court declined to resentence Petitioner.

14   (Doc. 18-5.) Petitioner did not appeal the decision.

15        On March 1, 2024, Petitioner filed a petition for writ of habeas corpus in this Court. (Doc.

16   1.)  Respondent filed an answer on March 20, 2025. (Doc. 36.)  Petitioner did not file a traverse.

17   **II.    FACTUAL BACKGROUND[2]**

18        A. Evidence

19        The victim testified he was in a "sexual relationship" with Marlene Coffman.[3] Petitioner

20   was also in a relationship with Coffman. On one occasion, Petitioner approached the victim in an

21   alley and challenged him to a fight. No fight ensued but Petitioner did fire a gunshot at the victim.

22        Three days later, Petitioner confronted the victim in Coffman's home and said, "I thought I

23   told you to stay away from ... here."[4] He then stated, "You better get out of here before I blast

24   you, fool." The victim hesitated and Petitioner shot him twice.

25

---

26   [2] The Fifth DCA's summary of facts in its unpublished opinion is presumed correct.  28 U.S.C. §§
     2254(d)(2), (e)(1).  Therefore, the Court will rely on the Fifth DCA's summary of the facts in Larios, 2022

27   WL 13764789, at *1).  See Moses v. Payne, 555 F.3d 742, 746 (9th Cir. 2009).
     [3] Coffman was a codefendant and convicted by the same jury of violating Cal. Penal Code § 32.

28   [4] The alley where the prior confrontation took place is near Coffman's home.

An eyewitness testified she heard the gunshots and then saw a man run to a car, enter it, and "dr[i]ve off real fast." Coffman was the driver. Petitioner and Coffman were arrested about one week later and Petitioner possessed ammunition matching the "brand and . . . cartridge designation" used in the shooting.

B. <u>Inadmissible Evidence</u>

The jury inadvertently heard the victim state Petitioner "had just got out of prison, I guess." This statement was contained in an unredacted video recording but not in the accompanying transcript. The video was later redacted to conform to the transcript.

**III.    DISCUSSION**

A.    <u>Jurisdiction</u>

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); <u>Williams v. Taylor</u>, 529 U.S. 362, 375 n. 7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution.  The challenged conviction arises out of the Kern County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997) (holding the AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

B.    <u>Legal Standard of Review</u>

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State

3

1   court proceeding."  28 U.S.C. § 2254(d); <u>Lockyer v. Andrade</u>, 538 U.S. 63, 70-71 (2003);

2   <u>Williams</u>, 529 U.S. at 412-413.

3         Under Section 2254(d)(1), a state court decision is "contrary to" clearly established

4   federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme

5   Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a

6   [Supreme Court] decision but reaches a different result."  <u>Brown v. Payton</u>, 544 U.S. 133, 141

7   (2005) (citing <u>Williams</u>, 529 U.S. at 405-406).  This court looks to "Supreme Court holdings at

8   the time of the state court's last reasoned decision" as "the source of clearly established Federal

9   law for the purposes of AEDPA." <u>Barker v. Fleming</u>, 423 F.3d 1085, 1093 (9th Cir. 2005). A

10  Supreme Court precedent is not clearly established law under section 2254(d)(1) unless the Court

11  "squarely addresses the issue" in the case before the state court. <u>Wright v. Van Patten</u>, 552 U.S.

12  120, 125–26 (2008) (per curiam) (concluding that a state court had not unreasonably applied

13  federal law to a claim of prejudice under <u>Strickland</u> where the logic of petitioner's argument

14  would have required the extension of the Supreme Court's inherent prejudice doctrine to a new

15  context); <u>Carey v. Musladin</u>, 549 U.S. 70, 76–77 (2006) (same). While "[c]ertain principles are

16  fundamental enough that when new factual permutations arise, the necessity to apply the earlier

17  rule will be beyond doubt," <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 666 (2004), "when a state

18  court may draw a principled distinction between the case before it and Supreme Court caselaw,

19  the law is not clearly established for the state-court case." <u>Murdoch v. Castro</u>, 609 F.3d 983, 991

20  (9th Cir. 2010). "'[I]f a habeas court must extend a rationale before it can apply to the facts at

21  hand,' then by definition the rationale was not 'clearly established at the time of the state court

22  decision.'" <u>White v. Woodall</u>, 572 U.S. 415, 426 (2014) (quoting <u>Yarborough</u>, 541 U.S. at 666).

23         In <u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011), the U.S. Supreme Court explained that

24  an "unreasonable application" of federal law is an objective test that turns on "whether it is

25  possible that fairminded jurists could disagree" that the state court decision meets the standards

26  set forth in the AEDPA.  The Supreme Court has "said time and again that 'an unreasonable

27  application of federal law is different from an incorrect application of federal law.'"  <u>Cullen v.</u>

28  <u>Pinholster</u>, 563 U.S. 170, 203 (2011).  The petitioner "must show far more than that the state

1    court's decision was 'merely wrong' or 'even clear error.'" <u>Shinn v. Kayer</u>, 592 U.S. 111, 118

2    (2020) (quoting <u>Virginia v. LeBlanc</u>, 582 U. S. 91, 93 (2017) (*per curiam*)).  Rather, a state

3    prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's

4    ruling on the claim being presented in federal court was so lacking in justification that there was

5    an error well understood and comprehended in existing law *beyond any possibility of fairminded*

6    *disagreement*." <u>Richter</u>, 562 U.S. at 103 (emphasis added); <u>see also Kayer</u>, 592 U.S. at 118.  In

7    other words, so long as fairminded jurists could disagree with each other as to whether the state

8    court was correct, the state court decision is not unreasonable under AEDPA.  Congress "meant"

9    this standard to be "difficult to meet." <u>Richter</u>, 562 U.S. at 102.

10        Section 2254(d)(2) pertains to state court decisions based on factual findings.  <u>Davis v.</u>

11    <u>Woodford</u>, 384 F.3d 628, 637 (9th Cir. 2003) (citing <u>Miller-El v. Cockrell</u>, 537 U.S. 322 (2003)).

12    Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the

13    petitioner's claims "resulted in a decision that was based on an unreasonable determination of the

14    facts in light of the evidence presented in the State court proceeding." <u>Wiggins v. Smith</u>, 539

15    U.S. 510, 520 (2003); <u>Jeffries v. Wood</u>, 114 F.3d 1484, 1500 (9th Cir. 1997).  The federal habeas

16    court must give "substantial deference" to the state court. <u>Brumfield v. Cain</u>, 576 U.S. 305, 314

17    (2015). "Factual determinations by state courts are presumed correct" and the petitioner bears the

18    burden of overcoming the presumption with "clear and convincing evidence to the contrary."

19    <u>Miller-El</u>, 537 U.S. at 340; 28 U.S.C. § 2254(e)(1). A state court's factual finding is unreasonable

20    when it is "so clearly incorrect that it would not be debatable among reasonable jurists." <u>Jeffries</u>,

21    114 F.3d at 1500; <u>see Taylor v. Maddox</u>, 366 F.3d 992, 999-1001 (9th Cir. 2004), *cert.denied*,

22    <u>Maddox v. Taylor</u>, 543 U.S. 1038 (2004).  If "'[r]easonable minds reviewing the record might

23    disagree' about the finding in question, '. . . that does not suffice'" to prove the lower court's

24    factual determination was unreasonable. <u>Wood v. Allen</u>, 558 U.S. 290, 301 (2010) (alteration in

25    original) (quoting <u>Williams v. Taylor</u>, 529 U.S. 362, 410 (2000)).

26        To determine whether habeas relief is available under § 2254(d), the federal court looks to

27    the last reasoned state court decision as the basis of the state court's decision.  <u>See Ylst v.</u>

28    <u>Nunnemaker</u>, 501 U.S. 979, 803 (1991); <u>Andrews v. Davis</u>, 994 F.3d 1042, 1107 (9th Cir. 2019)

1    (en banc). "[A]lthough we independently review the record, we still defer to the state court's

2    ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

3        The prejudicial impact of any constitutional error is assessed by asking whether the error

4    had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v.

5    Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007)

6    (holding that the Brecht standard applies whether or not the state court recognized the error and

7    reviewed it for harmlessness).

8        C.    Review of Petition

9        On appeal, Petitioner claimed his trial was fundamentally unfair due to the erroneous

10    admission of the statement made by the victim that Petitioner "had just got out of prison, I guess."

11    Petitioner did not make the basis for his claim clear. Therefore, the Fifth DCA analyzed the claim

12    on three interrelated theories: prosecutorial misconduct; motion for new trial; and erroneous

13    admission of evidence. In his petition for review, Petitioner specified the basis for his claim as

14    one of prosecutorial misconduct. Thus, only the subclaim of prosecutorial misconduct was

15    properly exhausted. The distinction is not significant, however, since the theories of prosecutorial

16    misconduct and erroneous admission of evidence rely on the same concept of fundamental

17    fairness. See Andrew v. White, 604 U.S. ___, ___, 145 S.Ct. 75, 2025 WL 247502, at *5 (2025)

18    ("the Due Process Clause forbids the introduction of evidence so unduly prejudicial as to render a

19    criminal trial fundamentally unfair"); Smith v. Phillips, 455 U.S. 209, 219 (1982) ("the

20    touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of

21    the trial"). As to the basis for mistrial, the theory is based on an application of prosecutorial

22    misconduct as to state law, and habeas relief does not lie for errors of state law. Estelle v.

23    McGuire, 502 U.S. 62, 67 (1991). Therefore, the Court will address the claim on the theory of

24    prosecutorial misconduct.

25        1.    State Court Decision

26        In the last reasoned decision, the Fifth DCA rejected the claim as follows:

27

28

1

## I. The Inadmissible Evidence Was Not Prejudicial

2

3

Larios argues "the prosecution misconduct [in failing to redact the video] violated [his] federal constitutional rights to due process and a fair trial." He claims, "Once the jury heard inadmissible evidence that [he] just got out of prison, the bell could not be 'unrung.'" Alternatively, he contends "the prosecution misconduct requires reversal under state law if it is reasonably probable that the jury would have reached a more favorable result absent the objectionable conduct."

4

5

6

The People argue "[t]he inadvertent failure to redact the fleeting reference to [Larios's] prior custody status did not irretrievably damage his chances of receiving a fair trial." They also believe "he has forfeited any claim of prosecutorial error, which, in any event, fails due to a lack of showing of prejudice."

7

8

9

Candidly, it is not clear what precise basis Larios rests his argument upon. It appears he presents a prosecutorial misconduct claim couched within a fair trial claim. He also mentions the standard for reviewing a denied mistrial motion. Accordingly, we will consider prosecutorial misconduct, the motion for a mistrial, and the right to a fair trial.

10

11

### A. Additional Background

12

13

Prior to jury trial, the trial court granted Larios's motion in limine to exclude from evidence "all references" to the fact he was "on supervision." The court noted, "[T]o the extent that, for example," Larios's "parole status has been excluded, that is information you would need to share with" the witnesses.

14

15

During the trial, the prosecutor presented a video recording of a law enforcement interview with the victim. An initial attempt to play the video was halted by the court. The court explained to the jury there was "an issue with the disk" and it would be addressed "tomorrow morning."

16

17

18

The following morning, an edited recording was played for the jury. When the video concluded, the prosecutor asked for a sidebar outside the jury's presence. The jury was excused from the courtroom and the parties discussed the fact the video was insufficiently redacted. In the court's words, "there was a portion [of the video] that did not appear on the transcript ... that was not to be in there relating to a potential statement regarding ... Larios and being in prison or having just gotten out of prison, something of that nature."

19

20

21

Later, Larios's counsel filed a motion for a mistrial. [Fn.6] At the hearing on the motion, counsel argued "the defense ... very assiduously ... guarded the fact" Larios had a "prior conviction" and "that he went to prison ...." Counsel explained protecting that fact impacted jury selection because "the jury" was "not asked" how "they feel about a client having convictions and whether they can sit on a jury knowing that fact, whether they can overcome that fact." Counsel added the prior conviction fact impacted opening statement because she "would never do an opening statement where [she] do[es] not mention the fact that, 'Hey, you know, the client has prior convictions.'"

22

23

24

25

26

[Fn.6] The later filing complied with the court's wish. The court, speaking about the mistrial motion, stated, "I don't want to have the motion made sort of on the fly if we don't have to do that, and so we are going to hear that motion on Monday morning."

27

28

7

The court concluded "there is no doubt that an erroneous admission of evidence occurred." The court believed it could "address [the issue] adequately with a curative instruction" and subsequently denied the motion. Ultimately, Larios's counsel "decided to forego a curative instruction." Accordingly, the jury was not instructed to disregard the victim's statement Larios "had just got out of prison, I guess ...."

**B. Analysis**

We will first address prosecutorial error, then the motion for a mistrial, and last the right to a fair trial. We find no error on these grounds.

### i. Prosecutorial Misconduct

"'Under California law, a prosecutor commits reversible misconduct if he or she makes use of "deceptive or reprehensible methods" when attempting to persuade either the trial court or the jury, and it is reasonably probable that without such misconduct, an outcome more favorable to the defendant would have resulted. [Citation.] Under the federal Constitution, conduct by a prosecutor that does not result in the denial of the defendant's specific constitutional rights—such as a comment upon the defendant's invocation of the right to remain silent—but is otherwise worthy of condemnation, is not a constitutional violation unless the challenged action " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"'" (*People v. Fuiava* (2012) 53 Cal.4th 622, 679.) "'[I]t is misconduct for a prosecutor *intentionally* to elicit inadmissible testimony" or present inadmissible evidence, but "merely eliciting evidence is not misconduct.'" (*Ibid.*)

Here, it does not appear the prosecutor intentionally elicited inadmissible evidence. The transcript itself was redacted and, based on the record, no other redactions were missed. It appears the error was negligent, not malicious. In sum, there is no prosecutorial misconduct.

In truth, the claim presented is most akin to an inadmissible evidence claim. "'When evidence is erroneously admitted, we do not reverse a conviction unless it is reasonably probable that a result more favorable to the defendant would have occurred absent the error.'" (*People v. Young* (2019) 7 Cal.5th 905, 931 (*Young*).) This standard is not met for two reasons.

One, the inadvertently admitted evidence was speculative. The jury heard the victim state he *guessed* Larios had recently been released from prison. Speculation is not evidence. (*People v. Waidla* (2000) 22 Cal.4th 690, 735.) There is no reason to believe the jury would base its verdict on a guess.

Two, the jury acquitted Larios of firearm assault as charged in Count 3. This dispels any inference of bias. (*People v. Ramos* (2022) 77 Cal.App.5th 1116, 1131-1132.)

For all these reasons, we find no prejudice stemming from the inadmissible evidence. Accordingly, we reject the prosecutorial misconduct claim. [Fn.7]

> [Fn.7] Notably, in similar circumstances, the California Supreme Court has recognized the decision to forgo a curative admonition forfeits a prosecutorial misconduct claim. (*People v. Valdez* (2004) 32 Cal.4th 73,

124-125 (*Valdez*) [prosecutorial misconduct claim forfeited where counsel rejected curative admonition after witness improperly referred to defendant's "custodial status"].)

### ii. Mistrial Motion

"'"A mistrial should be granted if the court is apprised of prejudice that it judges incurable by admonition or instruction. [Citation.] Whether a particular incident is incurably prejudicial is by its nature a speculative matter, and the trial court is vested with considerable discretion in ruling on mistrial motions. [Citation.]" [Citation.] A motion for a mistrial should be granted when "'"a [defendant's] chances of receiving a fair trial have been irreparably damaged.""'" (*People v. Silveria and Travis* (2020) 10 Cal.5th 195, 298.) A ruling denying a mistrial motion is reviewed for abuse of discretion. (*People v. Schultz* (2020) 10 Cal.5th 623, 673.) Larios bears the burden to show the trial court abused its discretion. (*People v. Maury* (2003) 30 Cal.4th 342, 437.)

The burden is not satisfied in this case. Put simply, the court here did not abuse its discretion in finding a curative admonition was sufficient to dispel any prejudice. A mistrial motion is properly denied where there is no prosecutorial misconduct (*ante*) and the reference to criminal history is "brief and isolated ...." (*Valdez, supra*, 32 Cal.4th at p. 128.) Indeed, "[t]he California Supreme Court has consistently found vague and fleeting references to a defendant's past criminality to be curable by appropriate admonition to the jury." (*People v. Franklin* (2016) 248 Cal.App.4th 938, 955.) This case is no exception.

### iii. Due Process and the Right to a Fair Trial

The erroneous admission of evidence "results in a due process violation only if it makes the trial *fundamentally unfair*." (*People v. Partida* (2005) 37 Cal.4th 428, 439.) As noted *ante*, the erroneous admission of evidence is reviewable for prejudice. (*Young, supra*, 7 Cal.5th at p. 931.) Accordingly, the "brief and isolated" (*Valdez, supra*, 32 Cal.4th at p. 128) reference to prison in this case could not have rendered the trial fundamentally unfair. This is especially so where the reference was speculative. In short, Larios was not denied a fair trial.

*Larios*, 2022 WL 13764789, at *2-4.

### 2. Legal Standard

Federal habeas review of prosecutorial misconduct claims is limited to the narrow issue of whether the alleged misconduct violated due process. See Darden v. Wainwright, 477 U.S. 168, 181 (1986). A petitioner is entitled to habeas corpus relief only if the prosecutor's misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). To constitute a due process violation, the prosecutorial misconduct must be "of sufficient significance to result in the denial of the defendant's right to a fair trial." Greer v. Miller, 485 U.S. 756, 765 (1987) (quoting United States v. Bagley, 473 U.S. 667 (1985)). Any claim of prosecutorial misconduct must be reviewed

1    within the context of the entire trial.  Id. at 765-66; United States v. Weitzenhoff, 35 F.3d 1275,

2    1291 (9th Cir. 1994).  The Court must keep in mind that "[t]he touchstone of due process analysis

3    in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the

4    prosecutor" and "the aim of due process is not punishment of society for the misdeeds of the

5    prosecutor but avoidance of an unfair trial to the accused."  Smith v. Phillips, 455 U.S. 209, 219

6    (1982).  If prosecutorial misconduct is established, and it was constitutional error, the error must

7    be evaluated pursuant to the harmless error test set forth in Brecht v. Abrahamson, 507 U.S. 619

8    (1993).  See Thompson v. Borg, 74 F.3d 1571, 1577 (9th Cir. 1996) (Only if constitutional error

9    is established "would we have to decide whether the constitutional error was harmless.").

10                   3.   Analysis

11           In rejecting the claim, the state court, inter alia, determined that Petitioner failed to

12   demonstrate prejudice resulting from the admitted statement.  Upon review of the statement in the

13   context of the trial, see Greer, 485 U.S. at 765-66, the state court determination was not

14   objectively unreasonable.

15           First, the statement was brief and isolated. It was a single statement occurring in the midst

16   of a videotaped interview. No further mention of the statement was made. Second, it was

17   speculative, with the witness stating, "I guess." The state court reasonably found that the jury

18   would not base its verdict on a guess. In fact, the statement was so innocuous that defense counsel

19   refused the trial court's offer to provide a curative instruction to the jury. A fairminded jurist

20   could conclude that this refusal by defense counsel showed the statement was so brief, isolated

21   and speculative that the jury could not have been affected by it.

22           The state court also noted that a lack of prejudice was demonstrated by the fact the jury

23   acquitted Petitioner of one of the charges. The premise of Petitioner's argument is that the jury

24   would have been so inflamed by the victim's "guess" that Petitioner "had just got out of prison"

25   that they would have ignored all jury instructions and evidence to find him guilty.  Certainly, a

26   rational jurist could have determined that the fact the jury acquitted him of one charge showed

27   they were not so affected, and that the statement was harmless. See Fernandez v. United States,

28   329 F.2d 899, 906 (9th Cir. 1964) (noting the best evidence of a jury's ability to

                                            10

1    compartmentalize is the fact the jury "did not indiscriminately convict . . . on all counts . . ., but

2    acquitted on counts where the evidence was weak").

3            As to the admission of the statement itself, Petitioner cannot show that it violates due

4    process because the Supreme Court has not held that evidence of other crimes or bad acts violates

5    due process. See Estelle v. McGuire, 502 U.S. 62, 75 n.5 (1991) (explaining that it "express[es]

6    no opinion on whether a state law would violate the Due Process Clause if it permitted the use of

7    'prior crimes' evidence to show propensity to commit a charged crime"); accord Mejia v. Garcia,

8    534 F.3d 1036, 1047 (9th Cir. 2008) ("[T]he United States Supreme Court has never established

9    the principle that introduction of evidence of uncharged offenses necessarily must offend due

10    process"); Larson v. Palmateer, 515 F.3d 1057, 1066 (9th Cir. 2008) (stating "[t]he Supreme

11    Court has expressly reserved the question of whether using evidence of the defendant's past

12    crimes to show that he has a propensity for criminal activity could ever violate due process" and

13    holding that "[b]ecause the [Supreme] Court has 'expressly left this issue an "open question,"'" the

14    state court did not unreasonably apply clearly established federal law in determining that the

15    admission of evidence of Larson's criminal history did not violate due process"); Alberni  v.

16    McDaniel, 458 F.3d 860, 866 (9th Cir. 2006) (concluding, on deferential review under AEDPA,

17    that state supreme court did not act in objectively unreasonable manner in determining the use of

18    propensity evidence did not violate due process because the Supreme Court expressly left open

19    the question whether use of propensity evidence may violate due process).  Since the Supreme

20    Court has not found the admission of prior bad acts evidence to violate due process, Petitioner

21    cannot show that admission of the statement violated his due process rights. See Wright v. Van

22    Patten, 552 U.S. 120, 125-26 (2008) (per curiam) (if no Supreme Court precedent controls a legal

23    issue raised by a habeas petitioner in state court, the state court's decision cannot be contrary to,

24    or an unreasonable application of, clearly established federal law).

25            In summary, the brief, isolated and conjectural statement was not of such significance that

26    the trial was infected with unfairness so as to make the resulting conviction a denial of due

27    process.  Donnelly, 416 U.S. at 643; Greer, 485 U.S. at 765.  Petitioner fails to show that the state

28    court denial of his claim was contrary to, or an unreasonable application of, Supreme Court

1    precedent, nor does he show the state court based its decision on an unreasonable determination

2    of the facts. The petition should be denied.

3    **IV.    RECOMMENDATION**

4            Accordingly, the Court RECOMMENDS that the Petition for Writ of Habeas Corpus be

5    DENIED with prejudice on the merits.

6            This Findings and Recommendation is submitted to the United States District Court Judge

7    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the

8    Local Rules of Practice for the United States District Court, Eastern District of California.  Within

9    twenty-one (21) days after being served with a copy of this Findings and Recommendation, a

10   party may file written objections with the Court and serve a copy on all parties. Id. The document

11   should be captioned, "Objections to Magistrate Judge's Findings and Recommendation" and shall

12   not exceed fifteen (15) pages, except by leave of court with good cause shown. The Court will not

13   consider exhibits attached to the Objections. To the extent a party wishes to refer to any

14   exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page

15   number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in

16   excess of the fifteen (15) page limitation may be disregarded by the District Judge when

17   reviewing these Findings and Recommendations pursuant to 28 U.S.C. § 636 (b)(1)(C).  The

18   parties are advised that failure to file objections within the specified time may result in the waiver

19   of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014).  This

20   recommendation is not an order that is immediately appealable to the Ninth Circuit Court of

21   Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure,

22   should not be filed until entry of the District Court's judgment.

23

     IT IS SO ORDERED.

24

25   Dated:   **May 29, 2025**                        _/s/ Sheila K. Oberto_

26                                                    UNITED STATES MAGISTRATE JUDGE

27

28

                                                    12